## MACCHIARELLA v. UNITED STATES.
### Civ. No. 1612.

United States District Court
S. D. Florida, Tampa Division.
Jan. 4, 1951.

150

Fowler, White, Gillen, Yancey & Humkey, Tampa, Fla., for plaintiff.

Herbert S. Phillips, U. S. Atty., and Arthur L. Steed, Asst. U. S. Atty., Tampa, Fla., for defendant.

BARKER, District Judge.

This cause coming on for trial on bill of complaint, answer and amendment thereto, and parties plaintiff and defendant both having introduced testimony, and the Court having heard argument of counsel, makes the following findings of fact, conclusions of law and judgment.

### Findings of Fact

1. This suit is brought under the provisions of the Federal Tort Claims Act, 28 U.S.C.A. § 1346 and in pursuance of the provisions of the Florida Death by Wrongful Act Statute, F.S.A. § 768.01 et seq.

2. The facts in the case are for the most part undisputed and are as follows: The plaintiff is the widow of Nicholas Macchiarella who died on April 14, 1948, in the hospital at MacDill Air Force Base, Hillsborough County, Florida, after having suffered a compound fracture of the skull and other injuries which resulted from his fall from a height of approximately thirty feet while he was engaged in painting the exterior of Hangar No. 2 at MacDill Air Force Base, Hillsborough County, Florida, and after he had been shocked by coming in contact with an electric wire. Nicholas Macchiarella, the decedent, George E. Webster and Peter Zambito were on April 14, 1948, painters in the employ of Jim Reynolds who on that day was an independent contractor, and the said Nicholas Macchiarella, George E. Webster and Peter Zambito, in pursuance of the contract then in existence between the United States of America and Jim Reynolds, were preparing to paint and painting the exterior of Hangar No. 2, MacDill Air Force Base, Hillsborough County, Florida, and while said painters were so engaged the said Nicholas Macchiarella, while standing on a ladder which was then and there leaning against the easterly corner of Hangar No. 2, came in contact with, and was shocked by, an uninsulated high tension electric wire which at that time was carrying approximately 2400 volts of electricity. Just prior thereto the said Nicholas Macchiarella had wet down the side of Hangar No. 2 by the use of a water hose, and in consequence of the use of such hose, Nicholas Macchiarella, his clothing, the ladder, and the building were wet. At the time the said Nicholas Macchiarella came in contact with the electric wire he was standing approximately six feet from the top of the ladder and had just finished a stroke with his paint brush. The said Nicholas Macchiarella fell backwards from said ladder and struck the lime rock pavement, first striking said lime rock pavement with his head. The said accident occurred at approximately 12:35 o'clock, P.M., on April 14, 1948, and Nicholas Macchiarella died in the MacDill Field Hospital at about 8:00 o'clock, P.M., on April 14, 1948.

3. Parallel to the side of said Hangar No. 2 there were on April 14, 1948, three uninsulated electric wires thirty feet and two inches above the ground. The top of said Hangar No. 2 at the point from which the said Nicholas Macchiarella fell was approximately the same height as the three electric lines, and at the point on Hangar No. 2, which the said Nicholas Macchiarella was painting, the nearest uninsulated electric wire was a distance of 21½ inches from the side of said Hangar No. 2. The three electric wires were fastened to the supporting poles by means of insulators, and on the light pole just to the west of the pole near which Nicholas Macchiarella was theretofore painting, there were two large transformers, and at this latter pole the uninsulated electric wires turned ninety degrees in a southerly direction. The pole on which the said transformers were supported was near but easterly of the west corner of said Hangar No. 2, and in the approximate middle of said Hangar No. 2, near the top thereof, there appeared a sign containing the words: "Danger 2400 volts". On the morning of April 14, 1948, Nicholas Macchiarella, George E. Webster and Peter Zambito had painted the southerly side of said Hangar No. 2 and had passed both the pole with insulators on it and the warning sign. The said painters had been taking turns with first one painting from the high ladder and then another, and on that morning George E. Webster had been on the high ladder and had been painting the top strip of the hangar. While they were stopped for lunch, George E. Webster cautioned Macchiarella and Zambito that the lines running parallel to Hangar No. 2 were electric lines and advised them to exercise caution. The position of the wires per se did not constitute a normal hazard to the public in general in the normal course of events, as they were high above the ground and could only be reached by means of a ladder or other similar device enabling one to climb up to them.

4. Jim Reynolds, the independent contractor, had not supervised the work of Macchiarella, Webster and Zambito on April 14, 1948, and Nicholas Macchiarella was in charge of the crew in the absence of Reynolds. Nicholas Macchiarella had been engaged in painting for a period of about thirty-seven years and was known as a fine worker, and in the language of Jim Reynolds, the independent contractor, the said Nicholas Macchiarella was known as a "high scaffold man", having theretofore painted many tall buildings. At the time of Nicholas Macchiarella's death he was fifty-two years of age.

## Conclusions of Law

1. The Court has jurisdiction of the parties and the subject matter of this suit.

2. The proximate cause of Nicholas Macchiarella's death was his fall from a ladder.

3. It was the duty of Jim Reynolds, the independent contractor, to determine when and where Macchiarella, Webster and Zambito were to paint, and at the time Macchiarella fell they were under his supervision and control, and it was the said Jim Reynolds who directed Macchiarella, Webster and Zambito as to the place they were to paint and the time they were to paint, and it was not the duty of the United States to anticipate the presence of the employees of Jim Reynolds, independent contractor, at Hangar No. 2 on April 14, 1948. There was no evidence that the United States of America, or any of its employees or agents, had any knowledge on April 14, 1948, that Macchiarella, Webster and Zambito were painting on the southerly side of Hangar No. 2. The defendant, United States of America, was without knowledge that any one would be near the uninsulated electric lines alongside Hangar No. 2. It was proved that after Macchiarella's fall and before the painting was completed an employee of the defendant insulated the wires running parallel to Hangar No. 2, and, therefore, it is assumed that had the said Jim Reynolds or Nicholas Macchiarella notified the defendant that they were beginning to paint the side of Hangar No. 2, precautions would have been taken by the defendant.

4. Taking into consideration the status of Nicholas Macchiarella on April 14, 1948, and the relationship existing between defendant, United States of Amer-

ica, and Macchiarella's employer, Jim Reynolds, I find that the United States was not guilty of negligence in its failure to furnish a reasonably safe place to work to the employees of Jim Reynolds, as the uninsulated wires did not constitute a hazard to the general public. There is no question here of an individual coming in contact with a dangling wire. There is no question here of the United States being notified in advance that the painters would soon begin painting along the exterior of Hangar No. 2, and a failure on the part of the defendant to take the necessary precaution to protect such painters after receiving notice from the independent contractor or one of his agents.

5. Under the conditions existing on April 14, 1948, and in the absence of Jim Reynolds, it was the duty of Nicholas Macchiarella as a reasonably prudent man and a man of considerable experience in painting to make inquiry about the uninsulated electric wires and to take reasonable precautions to protect himself against coming in contact with the uninsulated wires, and it was further the duty of the said Nicholas Macchiarella, in the absence of Jim Reynolds, to take such precautions for his own welfare as a reasonably prudent man should and would take under the circumstances existing on April 14, 1948. In addition the Court finds that prior to Nicholas Macchiarella's coming in contact with the uninsulated electric wires he had been warned of their presence and also it was apparent that they offered danger to anyone coming in contact with them.

6. Even if the United States of America were negligent in failing to furnish a reasonably safe place to work, which I do not find, the proximate cause of Nicholas Macchiarella's death was his contributory negligence in his failure to exercise reasonable care and caution for his own welfare, in his failure to make inquiry concerning the readily visible and visibly apparent uninsulated electric wires, and in his failure to heed the warning of his coworker, George E. Webster.

7. It is common knowledge that where a person is damp or wet, the danger from coming in contact with electric wires is much greater, and here we find an experienced man who is wet and who exposes himself to a visibly dangerous hazard in spite of a previous warning as to the danger.

8. Under the law and because of the contributory negligence of the deceased, judgment must be entered for the defendant.